## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NOBERTO COLÓN-LORENZANA, et. al.,

Plaintiffs,

v.                                           CIVIL NO.: 12-1794 (MEL)

SOUTH AMERICAN RESTAURANTS CORP.,

Defendant.

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On September 10, 2013, Noberto Colón Lorenzana ("Mr. Colón"), Gladys Gozá González, and the conjugal partnership they constitute (collectively "plaintiffs") filed an amended complaint against South American Restaurants Corporation[1] ("SARCO" or "defendant") alleging violations of the Lanham Act, 15 U.S.C. § 1120, for false of fraudulent trademark registration and a supplemental claims under the Puerto Rico Trademarks Act, Law 169 of December 16, 2009 ("Law 169"), and under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"). ECF No. 1. On December 12, 2013, SARCO moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF No. 31. Pending before the court are SARCO's motion, plaintiff's response in opposition, SARCO's reply, and plaintiff's surreply. ECF Nos. 31; 34; 37; 44.

---

[1] The amended complaint also includes claims against AFC Enterprises, Inc., Cajun Operating Company, and Cajun Funding Corp.; however, the claims against those parties have already been dismissed. ECF No. 49.

## II.    FACTUAL BACKGROUND

The following factual allegations are drawn from the amended complaint (ECF No. 29):

On August 17, 1987, Mr. Colón became an employee of a Church's Fried Chicken ("Church's") franchise in Puerto Rico. ¶ 9. Church's is a restaurant chain owned by SARCO, which SARCO purchased from Sheriff Jones. Id. Mr. Colón formerly worked for Sheriff Jones, which sold a chicken breast sandwich Mr. Colón created. ¶ 10. While Mr. Colón was employed by SARCO, he held various positions. ¶ 11. While he was working as a store manager, Mr. Colón suggested the concept for a new chicken sandwich to Mr. Raúl Ramírez and Mr. Gabriel Salvat, the President and Vice President of SARCO, respectively. ¶ 12. Mr. Colón asked them to include it as part of their daily menu. Id. Various sandwich acceptance tests were performed over the course of four or five months, which plaintiff attended. ¶¶ 13-15.

At the end of 1991, when Mr. Colón was employed as an Area Supervisor, SARCO held an activity for Church's staff and their families in the Caguas restaurant. ¶ 16. At the activity, guests were asked to create their own versions of the chicken sandwich using Mr. Colón's idea and recipe. ¶ 17. Mr. Colón selected the name "Pechu Sandwich" for the product, and on December 1991, SARCO started selling the Pechu Sandwich and ran an advertising campaign for it. ¶ 18. AFC Enterprises, Inc. filed an application for registration of the trademark "Pechu Sandwich," and the Department of State for the Commonwealth of Puerto Rico (the "DOS") issued a certificate of registration on March 4, 1999. ¶ 19. AFC Enterprises, Inc. ("AFC") assigned and transferred all the rights and goodwill of the "Pechu Sandwich" trademark to Cajun Operating Company ("COC"), and the DOS issued a certificate of assignment on February 28, 2008. ¶ 20. COC simultaneously assigned and transferred all rights and goodwill to Cajun

Funding Corporation. Id. Plaintiff was not employed by AFC or by COC and did not sign or enter any agreement to transfer or assign his rights related to his invention and its trade name to either corporation. ¶ 21.

On August 6, 2005, CFC assigned and transferred all rights and goodwill in the "Pechu Sandwich" trademark to SARCO. ¶ 22. On October 4, 2005, SARCO filed an application in the United States Patent and Trademark Office ("PTO") to register the name "Pechusandwich,"[2] and the name was registered on September 5, 2006. ¶ 23. SARCO acknowledged in writing that Mr. Colón created the sandwich and Mr. Colón testified in a case between SARCO and Kentucky Fried Chicken regarding the rights to the name "Pechu Sandwich." ¶ 24. SARCO has received economic benefit from Mr. Colón's creation and he never received any kind of compensation. ¶ ¶ 24; 27. Id. He did not sign or enter any agreement with SARCO to transfer or assign his rights pertaining to his invention or its trade name. Id. Defendant registered the name "Pechu Sandwich" as if it had been SARCO's creation, without plaintiff's knowledge, consent, or benefit. ¶ 25. SARCO created additional menu items and derived the items' names from the name "Pechu Sandwich" without Mr. Colón's consent or authorization, including: Pechuga Mexicana, Pechu Milanesa, Pechu Jr., Pechu Pop, Pechu Blue, Pechu Salads, Pechurrones, Pechu Filetes, Pechu Parrillera, and Pechu Bites. ¶ 26. SARCO, through Church's operation, has sold more than 46,000 "Pechusandwiches" and derived products daily resulting in revenues of more than $369,000,000.00. ¶ 29. SARCO continues to offer Mr. Colón's creation and products bearing Mr. Colón's creation for sale, without his authorization. ¶ 35.

---

[2] This spelling is taken from the amended complaint with respect to two particular allegations, regarding SARCO's registration of the mark and sale of the sandwiches. ¶¶ 23; 29. All other references to the sandwich in the amended complaint use the spelling "Pechu Sandwich".

### III.   STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 72 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." Id. An evaluation of a motion to dismiss under Rule 12(b)(6) requires the court to "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in plaintiff's favor.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. Aulson, 83 F.3d at 3. In order to survive a motion to dismiss, plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 133 (D.P.R.

2007) (quoting Twombly, 550 U.S. at 555-56) (citation omitted). Although Twombly was decided in the antitrust context, the Supreme Court has held that the standard expounded in that decision applies to "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

## IV.   LEGAL ANALYSIS

### 1.   The Lanham Act

#### a.   Trademark Infringement

Plaintiffs do not specifically allege a claim for trademark infringement in the amended complaint. However, to the extent that they imply the same by referring to plaintiffs' "rights" in the invention and trade name and SARCO's continued use of the same, the claim cannot succeed and is dismissed with prejudice. As plaintiffs themselves acknowledge, "rights in trademarks are . . . acquired by the first party to appropriate the mark and use it in commerce in connection with a particular product or service . . . ." ECF No. 34, at 8; see also Arvelo v. American Intern Ins. Co., 875 F.Supp. 95, 101 (D.P.R. 1995) aff'd, 66 F.3d 306 (1st Cir. 1995). "Rights in a trademark, however, cannot be obtained through discovery or invention alone. Some actual use of the trademark . . . is necessary to establish use. Neither conception of an idea for a mark, nor solicitation of advertising business constitute use of the trademark sufficient to acquire proprietary rights in the mark." Id. (internal citations omitted) (finding that inventing the name "Retail Plus" and presenting it to defendant did not constitute sufficient use to invoke trademark protection). Plaintiffs do not allege that they used the name "Pechu Sandwich" or "Pechusandwich" in commerce, let alone that they were the first to use it. The amended complaint does not contain an allegation that plaintiffs have sold Mr. Colón's chicken sandwich "invention" beyond Mr. Colón's capacity as an employee at Church's and / or Sheriff Jones.

Furthermore, plaintiffs do not aver that they ever registered, or attempted to register, the mark with the PTO. Overall, the allegations in the complaint do not support a finding that plaintiffs ever acquired trademark rights in the Pechu Sandwich or its trade name, such that SARCO may have infringed upon them in violation of the Lanham Act. Thus, the complaint fails to state a plausible claim for trademark infringement.

### b. Fraud in the Procurement

Section 38 of the Lanham Act provides that:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false of fraudulent declaration or representation, oral or in writing, by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained as a consequence thereof. 15 U.S.C. § 1120.

The elements of a claim of fraud in the procurement of a federal trademark registration, include: (1) that defendant made a false representation to the PTO regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark. See Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d 205, 220 (D. Mass. 2007) (citations omitted); see also San Juan Products, Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468, 473 (10th Cir. 1988) ("Thus, to prove that San Juan committed fraud in the procurement of its federal trademark, [the plaintiff] was required to plead and prove: (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.") "The 'knowledge' element is satisfied

where the applicant made material statements it knew or should have known were false." Id. (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:61 (4th ed. 2006)).

Unlike with respect to a claim for trademark infringement, as a form of fraud, plaintiffs must state the circumstances constituting fraud in the procurement of a registered trademark with particularity in accordance with Federal Rule of Civil Procedure 9(b). See San Juan Products, Inc., 849 F.2d at 472 (citing 2 J. McCarthy, Trademarks and Unfair Competition § 31:21(D), at 616; and King Automotive, Inc. v. Speedy Muffler King, Inc., 667 F.2d 1008, 1010 (C.C.P.A.1981).); see also Oreck Corp. v. Thompson Consumer Electronics, Inc., 796 F.Supp. 1152, 1159 (S.D.Ind. 1992) ("Allegations of trademark fraud must be stated with particularity . . . a general allegation of fraud without an accompanying recitation of details is insufficient.). "A claim of fraud must also satisfy the particularity requirements set forth in Fed.R.Civ.P. 9(b), mandating specifics about the time, the place, and content of the alleged false representations.'' Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (internal citation omitted). "Rule 9 imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage "strike suits," and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citing McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228–29 & n. 2 (1st Cir.1980)).

Plaintiffs' central allegations regarding this claim consist largely of the legal conclusions that "defendant[] fraudulently registered the name 'Pechu Sandwich' as if it had been

[SARCO's] creation without the plaintiff's knowledge, consent or benefit" and that SARCO "intentionally, willfully, fraudulently and maliciously procured the registration of [Mr. Colón's] creation in the [PTO] without his consent and proper compensation with the intent to injure [p]laintiffs." ECF No. 29, ¶ 25. These conclusory allegations do not suffice to state a claim for fraud in the procurement under Rule 9(b), as they do not shed light on the circumstances constituting fraud. While they make clear that Mr. Colón did not consent to SARCO's registration of the Pechu Sandwich trademark, it is not readily apparent how or why his knowledge, consent, or benefit is relevant to any of the essential elements of a claim for fraud in the procurement of a federal trademark.

The amended complaint is sufficiently specific with regard to the time of the false representation, stating that SARCO filed an application with the PTO on October 4, 2005, and a reasonable inference can be drawn that the location of the alleged false representation was on the application SARCO submitted to the PTO. The allegations in the complaint are vague with regard to the content of the alleged false representation; however, which presents an initial problem under Rule 9(b). See Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) (citing McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir.1980)) ("This circuit has interpreted Rule 9(b) to require 'specification of the time, place, and content of an alleged false representation.' Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint."); see also Woods, 733 F.3d at at 358 ("Although Woods's complaint includes a basic recitation of the elements of fraud, she does not indicate when, where, and how often the allegedly false states were made or what, specifically, was stated."). Plaintiffs' most specific averment in furtherance of their claim

for fraud in the procurement is that the Pechu Sandwich was registered "as if it had been SARCO's creation . . . ." ECF No. 29, ¶ 25. It is ambiguous whether plaintiffs intend to assert that SARCO affirmatively misrepresented who created the Pechu Sandwich, or whether the misrepresentation consisted of an omission or implication that SARCO "created" the sandwich by failing to inform the PTO that Mr. Colón had the ideas for the concept and name of the Pechu Sandwich. Assuming for argument's sake, however, that it can reasonably be inferred from plaintiff's allegations that SARCO knowingly made a false representation to the PTO in asserting that SARCO, rather than Mr. Colón, created the concept and name for the Pechu Sandwich, and that SARCO intended to induce the PTO into registering the trademark based on its representations, the amended complaint nonetheless fails to meet the pleading standard for fraud in the procurement.

The amended complaint's greatest infirmity is with regard to the materiality of the alleged misrepresentation. Plaintiffs simply do not allege that the creation of the sandwich was material to the PTO or that the PTO relied on a representation that SARCO created the Pechu Sandwich in registering the trademark, leading to SARCO's procurement of the trademark. See San Juan Products, Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468, 473 (10th Cir. 1988) ("The knowing misrepresentation must be material."); Aveda Corp. v. Evita Mktg., Inc., 706 F. Supp. 1419, 1426 (D. Minn. 1989) ("[T]he false statement is not material. Defendants do not in any way suggest that the registration would have been denied had the true date of the first use been provided on the application."); see also Publications Intern. Ltd., v. Leapfrog Enterprises, Inc., No. 01-C-3876, 2002 WL 31426652, *5 (N.D.Ill. Oct. 29, 2002) (finding that allegations that registrant had knowledge of fraudulent representations to the PTO in registering a federal

trademark are insufficient to state a claim that it was fraudulently procured, and noting that "[a]s the plain text of the statute suggests, it is the 'procurement' of the fraudulent registration that triggers damages under § 38."). Plaintiffs do not allege that the PTO would not have issued the Pechu Sandwich trademark to SARCO had it been aware that the concept and name for the sandwich were Mr. Colón's creation.[3]   The complaint is silent with regard to whether the PTO was "deceived into registering the mark" because of the alleged false representation or "reasonably relied" on the same. Woods, 733 F.3d at 358 ("[T]he complaint is wholly silent on the issue of her actual reliance. This vague pleading falls short of Rule 9(b)'s particularity requirement.").

This failure to aver that the PTO relied on Mr. Colón's alleged misrepresentation is fatal to plaintiff's claim. As the First Circuit recently explained in Juárez v. Select Portfolio Servicing, Inc., it is not enough that the allegations leave open the possibility that fraudulent representations were relied upon to satisfy Rule 9(b),[4] the compliant must actually allege reliance occurred to meet the particularity requirement:

> [I]t is possible that she relied upon defendants' representations of ownership and that, if she had known about their alleged falsity, she would have acted to prevent the foreclosure. . . . But

---

[3] Additionally, it is not apparent why the PTO would have relied on the alleged false representation in registering the trademark, as trademark rights do not derive from discovery or invention of the mark. See Carmichael v. Prime, IP 02-0379-C-T/K, 2003 WL 1903355 (S.D. Ind. Jan. 6, 2003) (dismissing claim for fraud in the procurement of a federal trademark under Rule 9(b) due to alleged misrepresentation with regard to whether registrant had the exclusive rights to the trademark because "[t]he fact that Ms. Shea hatched the original idea for marketing perfume under the STARDUST name simply does not give her any rights to the trademark; only by actual usage—which Plaintiffs do not allege—do such rights accrue.").

[4] Acknowledging that the underlying claim in Juárez was for fraud under Massachusetts law, the First Circuit's expression in that case regarding Rule 9(b)'s particularity requirement is instructive in the case of caption, where the claim at hand also includes a reliance element. Id. at 279 (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 193 (1st Cir. 1996)) ("In order to state a claim for fraud under Massachusetts law, a complaint must plead: (1) that the statement was knowingly false; (2) that [defendants] made the false statement with the intent to deceive; (3) that the statement was material to the plaintiff's decision . . . .; (4) that the plaintiffs reasonably relied on the statement; and (5) that the plaintiffs were injured as a result of their reliance.").

> establishing that something *possibly* happened is far distant from
> the threshold particularity requirements that must be pled under
> Fed.R.Civ.P 9(b). Much more would be required, for example, in
> the way of allegations regarding Juárez's reliance on defendant's
> allegedly false statements during the foreclosure proceedings. . . .
> Because the amended complaint is devoid of those specifics, we
> affirm the district court's dismissal of the fraud claim. 708 F.3d
> 269, 279-80 (1st Cir. 2013).

Like in Juárez, the amended complaint lacks particularity with regard to the specifics of the

PTO's reliance on SARCO's misrepresentation—in fact it does not assert that the PTO relied on

a misrepresentation by SARCO whatsoever. Therefore, taking as true that Mr. Colón created the

Pechu Sandwich, that he did not consent to SARCO's registration of the Pechu Sandwich

trademark, that he never entered an agreement to transfer or assign his "rights" pertaining to his

invention and its trade name, and that SARCO registered the trademark as if it had been its own

creation, the amended complaint lacks a valid claim for relief under Section 38 of the Lanham

Act.[5] Because plaintiffs do not satisfy the pleading standard for relief under 15 U.S.C. § 1120,

their claim for fraudulent trademark registration is dismissed, with prejudice.[6]

---

[5] Assuming, *arguendo*, that plaintiffs did satisfy the reliance requirement of their claim for fraud in the procurement of a federal trademark registration, the amended complaint suffers from another infirmity under Rule 9(b), with respect to damages.  The amended complaint states "[p]laintiffs have suffered damages as a result of the aforesaid acts." ECF No. 29, ¶ 37. They do not, however, provide any elaboration with regard to the nature of the damages they sustained as a result of SARCO's alleged fraudulent registration of the Pechu Sandwich trademark. Any injury plaintiffs might have sustained is speculative, as they do not allege that they are engaged in business such that SARCO's registration of the trademark could impact their market share, sales, reputation, or goodwill, among other types of potential harm. While this may suffice for pleading other claims involving monetary damages, it is not enough under § 38. Compare Jackson v. Lynley Designs, Inc., F.Supp 498, 500 (E.D. La. 1990) (dismissing claim under § 38 of the Lanham act noting that plaintiff "is not engaged in a trade or business which might result in damage to good will. Nor has she attempted to commercially exploit her name in any fashion so that defendants' action has caused her to lose business. In short plaintiff simply has completely failed to explain how the alleged fraud has injured her."); with Prof'l's Choice Sports Med. Products, Inc. v. Eurow & O'Reilly Corp., 13CV1484 AJB KSC, 2014 WL 524007 (S.D. Cal. Feb. 10, 2014) ("Plaintiff alleges damages, in terms of lost market share, sales decline, and damage to reputation, caused by the assertion or use of the fraudulently procured registration."); and Santander Consumer USA v. Walsh, 762 F.Supp.2d 217 (D.Mass 2010) ("The temporal connection with the fraudulent registrations and the resulting damage to defendants' reputations and to defendants' investors is not speculative. Defendants adequately allege an actual injury to their reputations and, drawing reasonable inferences in defendants' favor, their good will."); see also Woods, 733 F.3d at 358 (noting "[plaintiff] also fails to state the specific nature of

2.       **The Copyright Act**

The amended complaint does not specifically plead a claim under, or cite to, the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"). ECF No. 26. However, plaintiffs largely base their response in opposition on the Copyright Act, arguing that plaintiff invented and created the concept for a new chicken sandwich, authored its name, and that it is a "work" entitled to copyright protection. ECF No. 34, at 6-11. SARCO responds that the amended complaint does not include any copyright infringement claims, and that even if plaintiffs are permitted to raise a copyright infringement claim at this stage in the proceeding, the amended complaint fails to state a valid claim under the Copyright Act. ECF No. 37, at 2. Plaintiff points out that the amended complaint does reference copyright law, stating: "Defendants' acts have been committed in the District Court of Puerto Rico, within the jurisdiction of this Court, and the pecuniary rights of the work are obtained by the Copyright Law . . . ." ECF No. 29, ¶ 31. To the extent that plaintiffs are warranted in pursuing a claim under the Copyright Act based on this reference to copyright law in the amended complaint, that claim is nonetheless dismissed under Rule 12(b)(6).

According to § 102(a) of the Copyright Act:

> Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly

---

the harm, indicating only that it was of a monetary nature" in finding that allegations did not satisfy Rule 9(b)'s particularity requirement).

[6] Defendant also argues in the alternative that plaintiff's Lanham Act claims should be dismissed as untimely under the doctrine of laches. Although the court need not reach the merits of this argument, it is clear that plaintiffs waited a great deal of time to file this claim. Accordingly to plaintiffs' own allegations, Mr. Colón came up with the idea for the Pechu Sandwich in 1991, and SARCO registered the trademark in 2006. The complaint is silent with regard to when plaintiffs learned of SARCO's application to register the trademark, but around six years went by between the alleged registration and the filing of the original complaint in this case.

> or with the aid of a machine or device. Works of authorship
> include the following categories: (1) literary works; (2) musical
> works, including any accompanying words; (3) dramatic works,
> including any accompanying music; (4) pantomimes and
> choreographic works; (5) pictorial graphic, and sculptural works;
> (6) motion pictures and other audiovisual works; (7) sound
> recordings; and (8) architectural works. 17 U.S.C. § 102(a).

However, the Copyright Act specifically declines to extend protection to works that merely constitute ideas, procedures, processes, methods of operations, or discoveries. Id. at § 102(b). Further, the Register of Copyrights provides a list of works that may not be subject to copyright protection, among which it includes "mere listing of ingredients or contents." 37 C.F.R. § 202.1(a) (2014).

Neither plaintiff's idea for the chicken sandwich recipe or the name "Pechu Sandwich" is subject to copyright protection. First, the recipe itself and the concept for the chicken sandwich are ineligible for copyright protection. See Lambing v. Godiva Chocolatier, 142 F.3d 434, 434 (6th Cir. 1998) (citing Publications Int'l, Ltd. v. Meredith Corp., 88 F.3d 473, 480-81 (7th Cir. 1996)) ("Recipes, however, are not copyrightable. . . . The identification of ingredients necessary for the preparation of food is a statement of facts. There is no expressive element deserving copyright protection in each list. . . . Thus, recipes are functional directions for achieving a result and are excluded from copyright protection under 17 U.S.C. § 102(b)."). Furthermore, the idea for serving a chicken sandwich at a fast-food restaurant chain is also beyond the scope of protection under the Copyright Act. See e.g., Vásquez v. Ybarra, 150 F. Supp. 2d 1157, 1168 (D. Kan. 2001) ("[T]he 'idea' of serving, at a Mexican theme restaurant, three tacos along with a side of rice and beans, is not copyrightable. . . . It is undebateable that defendant is allowed to serve three meat tacos on the same plate as a serving of rice and beans."); see also Parham v.

Pepsico, Inc., 927 F.Supp. 177, 179 (E.D.N.C. 1995) ("The mere idea for a clear soft drink cannot be the subject of copyright protection."). Finally, taking Mr. Colón's allegation that he created the expression "Pechu Sandwich" as true, the name of the sandwich itself does not warrant copyright protection. See CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1519 (1st Cir. 1996) ("It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' . . . "); and Lewison v. Holt, 659 F.Supp. 547, 568 (S.D.N.Y 2009) ("[I]t is axiomatic that words, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked."); see also 37 C.F.R. § 202.1(a) (2014) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans"). Overall, to the extent that the amended complaint can be read to raise a claim under the Copyright Act, the same is dismissed with prejudice.

### 3.    Supplemental Law Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed.  See 28 U.S.C. § 1367(c)(3); González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  If all federal claims are dismissed prior to trial, then the state law claims "'should be dismissed as well.'"  Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). Since no federal cause of action would remain in this case, the Law 169 and Article 1802 are dismissed without prejudice.

**V.      CONCLUSION**

For the reasons above, SARCO's motion to dismiss (ECF No. 31) is **GRANTED**. Plaintiffs' claims under the Lanham Act and the Copyright Act are **DISMISSED WITH PREJUDICE** and their claims under Law 169 and Article 1802 are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 6th day of May, 2014.

s/Marcos E. López
U.S. Magistrate Judge